**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
EMPLOYERS INSURANCE COMPANY
OF WAUSAU, a/s/o Dollar Tree Stores, Inc.,

                                Plaintiff,

                - against -

PAUL A. SKINNER, an infant over the age of
fourteen years by his father and natural
guardian, Paul J. Skinner,

                          Defendant(s).
----------------------------------------------------------X

**ORDER**

CV 07-735 (JS) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

## I.    <span style="font-variant:small-caps">Preliminary Statement</span>

      Before the Court is a motion by Plaintiff Employers Insurance Company of Wausau

seeking a protective order that (1) commands Defendants Paul A. Skinner and Paul J. Skinner to

return or destroy all copies of an inadvertently-produced email which Plaintiff claims is protected

by the attorney-client privilege, and (2) precludes Defendants from using this document at trial or

in any other way [DE 22].  I have reviewed Plaintiff's motion, the affirmation of Defendants'

counsel filed in opposition to the motion [DE 25], and Plaintiff's reply [DE 26].  In addition, I

heard extensive oral argument from the parties during a May 16, 2008 hearing.  I have also

reviewed the document at issue *in camera*.  For the reasons set forth below, Plaintiff's motion for

a protective order is GRANTED.[1]

---

[1]      In addition, as discussed more fully in Section II, *infra*, Plaintiff's previously filed motion
to seal the document [DE 16], which the Court temporarily granted on April 2, 2008, is now
GRANTED on a permanent basis.

## II.  BACKGROUND

In August 2007, the parties entered into a Confidentiality Agreement which provided, in part as follows:

> The inadvertent production of any document or other information in the Action shall be without prejudice to any claim that such material is protected under the attorney-client privilege or is protected from discovery under the attorney work product doctrine and no party shall be held to have waived any rights by such inadvertent production.

Affidavit of Robert Kenney ("Kenney Aff."), Ex. A at 5.

On November 5, 2007, Plaintiff served Defendants with approximately 396 pages of documents in response to Defendants' document requests.  *Id.* at ¶ 4.  Plaintiff's counsel asserts that prior to production, an associate from counsel's law firm reviewed the documents and separated them into three piles.  These three piles were delineated as materials (1) responsive, (2) privileged, and (3) to be reviewed by a partner.  The associate pulled 16 documents (including the document that is the subject of this motion) from the production on the grounds of attorney-client privilege.  A law firm partner completed a second review of the documents with the associate.  *Id.* at ¶ 3.  When Plaintiff served the November 5, 2007 document production upon Defendants , its counsel included a cover letter stating that "[t]he production of this file in no way waives the attorney-client privilege or work product doctrine as it pertains to any documents inadvertently included therein.  *Id.*, Ex. C.  At some point, Plaintiff's counsel "prepared a privilege log that identified all 16 documents."  Certif. of Gary N. Smith ("Smith Certif.") at ¶ 4. It is unclear from the parties' submissions whether the privilege log was prepared contemporaneously with the document review and November 5 production, or sometime after. Defendants contend that the privilege log was never served upon them until December 28, 2007,

2

almost two months after the document production. Aff'n in Opp'n by Robert J. Gironda ("Gironda Aff'n"), Ex. B.

Plaintiff maintains that it inadvertently included an attorney-client privileged email (the "Email") in its November 5, 2007 document production. During the December 4, 2007 deposition of Martin Jeffers, one of the addressees of the Email, Defendants' counsel marked the Email as an exhibit. Plaintiff's counsel did not object to Defendants' counsel marking the Email during the deposition, but sent a letter to Defendants' counsel the following day requesting the return or destruction of the Email. *Id.*, Ex. F. Counsel exchanged subsequent correspondence in which Plaintiff demanded the return or destruction of the Email on the grounds that it was protected by the attorney-client privilege. Defendants refused to return or destroy the Email on the grounds that Plaintiff's "voluntary exchange of this information through the regular discovery procedures to a third party, voluntarily eliminates the attorney client privilege you have alleged." *Id.*, Ex. G.

On February 26, 2008, Defendants' counsel filed a motion requesting an extension of the discovery deadline and noting, *inter alia*, that Defendants disputed Plaintiff's pending request for the return or destruction of the Email [DE 13]. Defendants' counsel attached a copy of the Email to his letter motion and posted it on the ECF docket. Counsel did not attempt to file the Email under seal or submit it for an *in camera* review. On March 20, 2008, Plaintiff filed a motion to seal the Email on the grounds that the parties disputed whether or not the Email was covered by the attorney-client privilege. The Court temporarily granted Plaintiff's motion on April 2, 2008 and sealed the Email pending the outcome of this motion.

III.   **THE PARTIES' CONTENTIONS**

Plaintiff contends that the Email is protected by the attorney-client privilege because it contains a request from Plaintiff for a legal opinion from its "coverage counsel."  Mem. of Law in Supp. of Pl.'s Mot. for a Protective Order ("Pl. Mem.") at 6.  Plaintiff alleges that it is a subsidiary of Liberty Mutual and that Liberty Mutual's Property Division adjusts commercial losses for Plaintiff's claims, including the commercial losses that stemmed from the fire at Plaintiff's facility which forms the basis of this lawsuit.  Certification of Scott R. Kipnis ("Kipnis Certif.") at ¶ 2; Reply Aff. of Robert Kenney ("Kenney Reply Aff."), Ex. P at 10, 11.  The Email was sent by Raymond Charleston, who worked as Liberty Mutual's Regional Claims Manager at the time of the fire, to Liberty Mutual's coverage counsel, Robert Cossolini, and, according to Plaintiff, the individuals copied on the Email were all employees of Liberty Mutual.[2]  *Id.* ¶¶ 5-8.  Plaintiff further argues that "the privilege survived when plaintiff provided the e-mail to current counsel for the prosecution of this matter" because "[t]he e-mail pertained to the fire in question and is therefore within the same enterprise as this litigation."  Pl. Mem. at 8.

Plaintiff contends that its inadvertent production of the privileged Email to Defendants did not constitute a waiver of the attorney-client privilege because the document production was made pursuant to the terms of the parties' Confidentiality Agreement which specifically provided that the "inadvertent production of a document in discovery does not waive the attorney-client

---

[2]    Plaintiff asserts that David Alvarez worked as Liberty Mutual's adjuster assigned to the fire loss, Melvin Jeffers was Liberty Mutual's Executive General Adjuster assigned to oversee the adjustment of the fire loss, Steven Mathers was Liberty Mutual's Home Office Chief Examiner assigned to this claim, and Harris Berenson was Liberty Mutual Property's Assistant Vice President/Chief Counsel assigned to oversee this claim.  *Id.* ¶¶ 5-8.  Mr. Jeffers testified during his deposition that Mr. Cossolini was an attorney retained by Liberty Mutual "to assist us in our coverage evaluation" of the fire.  Kenney Reply Aff., Ex. P at 55.

privilege." *Id.* at 9. Plaintiff maintains that Defendants' refusal to return the Email is based upon their position that Plaintiff waived the privilege by inadvertently producing the Email, but "[t]his is the very argument that defendants have agreed they do not have to make" by signing the Confidentiality Agreement. *Id.*

According to Plaintiff, the Second Circuit has recognized the validity of confidentiality agreements, similar to the Confidentiality Agreement signed by the parties in this case, which "provide for out-of-court resolution of inadvertent production issues." *Id.* at 10. Plaintiff further claims that the general rule in the Second Circuit is that "unless the [Court finds that the] production was so reckless that the producing party showed no regard for the privileged document, the [Confidentiality Agreement] protects the document and maintains the privilege." *Id.* (citing *U.S. Fidelity & Guar. Co. v. Braspetro Oil Services Co.*, No. 97 Civ 6124, 2000 WL 744369, at *4 (S.D.N.Y. June 8, 2000)). Plaintiff argues that because it took numerous precautions before producing the documents on November 5, the disclosure of the Email cannot be considered "reckless." Pl. Mem. at 11.

Even without the protections of the parties' Confidentiality Agreement, Plaintiff argues that its inadvertent production of the Email did not waive the attorney-client privilege. *Id.* Plaintiff claims that it "took appropriate steps to protect privileged information," including (1) entering into a Confidentiality Agreement, (2) engaging in a multi-tiered review of its documents before production, (3) separating privileged documents from the production, and (4) serving a privilege log upon Defendants. *Id.*

Finally, Plaintiff asserts that established ethical principles provide that "where it is clear that [a] document [produced in discovery] was not intended for the receiving lawyer, the lawyer

should refrain from examining it, notify the sending lawyer, and abide that lawyer's instructions." *Id.* at 16. Plaintiff contends that, in contravention of these ethical provisions, Defendants did not disclose to Plaintiff that they had received the privileged Email, "surprise[d]" Plaintiff with the Email during Mr. Jeffers's deposition, and then "rather than preserving the document for an in camera review by the Court, the defendants filed it on the Court's publicly accessible ECF system." *Id.* at 17.

In opposition, Defendants state Plaintiff has failed to establish that the Email is protected by the attorney-client privilege.[3] Defendants assert that Plaintiff has not submitted any admissible evidence establishing either that Mr. Cossolini was acting as Plaintiff's counsel when the Email was sent or that the recipients of the Email were employees of or "acting on behalf of" the Plaintiff. Gironda Aff'n at ¶ 6. Defendants contend that the statement in the Kipnis Certification that Plaintiff is a subsidiary of Liberty Mutual "by itself is insufficient to establish that an attorney-client relationship existed . . . [because] mere conclusory assertions by an attorney are not evidence nor are they in admissible form and therefore should be disregarded." *Id.* at ¶ 7.

Even if the attorney-client privilege did protect the Email, Defendants argue, Plaintiff waived that privilege when it produced the Email to Defendants during discovery. Defendants claim that Plaintiff's conduct, including producing the Email as part of a 396-page document production on November 5, 2007, failing to object at the time that Defendants marked the email as an exhibit during the December 4, 2007 deposition, and failing to label the Email as

---

[3]     Defendants did not submit a memorandum of law, as is required by Local Civil Rule 7.1, but submitted only an attorney affirmation in opposition to Plaintiff's motion. This device is procedurally improper as is discussed more fully in Section IV, below.

"privileged" or "confidential," evidences that Plaintiff's counsel "did not take reasonable precautions to prevent such an inadvertent disclosure of the allegedly privileged email." *Id.* at ¶¶ 10-12. Defendants also assert that "plaintiff's counsel attempted to cover up its careless actions by later drafting and serving a privilege log upon the defendant on December 28, 2007," *id.* at ¶ 14, and so the after-the-fact service of the privilege log cannot support Plaintiff's claim that it employed reasonable precautions.

Finally, Defendants claim that they have relied upon the contents of the Email in planning their defense in this action. *Id.* at ¶15. Specifically, Defendants contend that counsel "conducted its December 4, 2007 examination of Mr. Jeffers with the belief that they would be able to use the subject email at trial" and "expended a large amount of time and resources in conducting a further investigation into what was said in the subject email." *Id.*

## IV.     PROCEDURAL DEFECTS WITH DEFENDANTS' OPPOSITION TO THE MOTION

As an initial matter, the Court addresses the procedural defects inherent in the form of Defendants' opposition to Plaintiff's motion. Defendants submitted only an affirmation by Defendants' counsel which does contain some citations to case law and is divided in sections under headings. However, Defendants failed to submit a memorandum of law. Local Civil Rule 7.1 provides:

> Except as otherwise permitted by the court, **all motions and all oppositions thereto shall be supported by a memorandum of law**, setting forth the points and authorities relied upon in support of or in opposition to the motion, and divided, under appropriate headings, into as many parts as there are points to be determined. Willful failure to comply with this rule may be deemed sufficient cause for the denial of a motion or for the granting of a motion by default.

Local Civil Rule 7.1 (emphasis added). Plaintiff asserts that Defendants' failure to submit a memorandum of law in compliance with Local Civil Rule 7.1 would justify the Court's rejection of Defendants' affirmation in opposition and the issuance of a default ruling in Plaintiff's favor. Reply Mem. of Law in Supp. of Pl.'s Mot. for a Protective Order ("Reply Mem.") at 2-3.

It is well-established that "[a]n affirmation alone will not satisfy the requirements of Rule 7.1." *Microsoft Corp. v. K & E Computer Inc.*, No. 00 Civ. 7550, 2001 WL 332962, at *1 (S.D.N.Y. Apr. 4, 2001); *Wenzhou Wanli Food Co. v. Hop Chong Trading Co.*, No. 98 Civ. 5045, 2000 WL 964944, at *3 (S.D.N.Y. July 11, 2000) ("Submitting an affidavit rather than a memorandum of law is insufficient under Local Rule 7.1."). "Failure to file a memorandum of law in opposition to the opposing party's motion is, by itself, a sufficient basis to grant the motion." *Kamara v. United States*, No. 04 Civ. 626, 2005 WL 2298176, at *1 (S.D.N.Y. Sept. 20, 2005) (citing *Loew v. Kolb*, No. 03 Civ. 5064, 2003 WL 22271221, at *2 (S.D.N.Y. Sept. 30, 2003)).

It is discretionary with the Court whether to accept Defendants' opposition papers despite the procedural deficiency. In this single instance, based upon the nature of the relief sought, and because the affirmation of Defendants' counsel does cite to legal authority and is divided into sections under appropriate subheadings, the Court will exercise its discretion to address the motion on its merits.[4] *See Moore v. Roadway Express, Inc.*, No. 07-CV-977, 2008 WL 819049, at *2 n.1 (E.D.N.Y. Mar. 25, 2008) (exercising discretion to accept opposition made in an attorney affirmation, as opposed to a memorandum of law, when affirmation contained all the

---

[4] Defendants are on notice, however, that failure to comply with the procedural requirements of the Federal Rules and Local Civil Rules of this District going forward will result in appropriate action by the Court.

8

hallmarks of Rule 7.1); *Holbert v. Cohen-Gallet*, No. 05 CV 1281, 2006 WL 47452, at *1 (E.D.N.Y. Jan. 9, 2006) (addressing motion on the merits even when opposition was filed as an affirmation that did not contain any citations to legal authority).

## V.     APPLICABLE LAW

Rule 26(c) governs applications for protective orders and provides, in relevant part:

> A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending . . . The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: (A) forbidding the disclosure or discovery.

Fed. R. Civ. P. 26(c). "The burden rests on the movant, who must establish good cause by a particular and specific demonstration of fact." *Prescient Partners, L.P. v. Fieldcrest Cannon, Inc.*, No. 96 Civ. 7590, 1997 WL 736726, at *3 (S.D.N.Y. Nov. 26, 1997) (internal citations and quotation marks omitted).

When the Court has diversity jurisdiction over a matter, "state law provides the rule of decision concerning the claim of attorney-client privilege." *Allied Irish Banks, P.L.C. v. Bank of Am., N.A.*, No. 03 Civ. 3728, 2008 WL 783544, at *3 (S.D.N.Y. Mar. 26, 2008) (citing Fed. R. Evid. 501; *Dixon v. 80 Pine St. Corp.*, 516 F.2d 1278, 1290 (2d Cir. 1975)). Plaintiff maintains that New York law regarding attorney-client privilege governs in this case, Pl. Mem. at 6, and Defendants do not dispute this point. Because the alleged tort underlying this action (the fire set at a Dollar Tree Store) occurred in New York, and because this case is based upon diversity jurisdiction, the legal standard governing the application and waiver of the attorney-client privilege for the purposes of this motion is governed by the law of New York. *In re Pfohl Bros.*

*Landfill Litig.*, 175 F.R.D. 13, 21 (W.D.N.Y. 1997) (finding that in a diversity action, "as the alleged torts in the instant case occurred within New York and the parties do not dispute that, New York law applies"); *see also Grinnell Corp. v. ITT Corp.*, 222 F.R.D. 74, 76 (S.D.N.Y. 2003) ("In federal diversity actions . . . issues of attorney-client privilege are governed by New York law.").

Under New York's Civil Practice Law and Rules ("CPLR"), the attorney-client privilege protects "confidential communication[s] made between attorney and client in the course of professional employment." NY CPLR § 4503(a). "In general, disclosure of a privileged document results in a waiver of the privilege unless the party asserting the privilege meets its burden in proving that (1) it intended to maintain confidentiality and took reasonable steps to prevent its disclosure; (2) it promptly sought to remedy the situation after learning of the disclosure; and (3) the party in possession of the materials will not suffer prejudice if a protective order is granted." *AFA Protective Sys., Inc. v. City of New York*, 788 N.Y.S.2d 128, 129-30 (2d Dep't 2004); *see also Baliva v. State Farm Mut. Auto. Ins. Co.*, 713 N.Y.S.2d 376, 377 (4th Dep't 2000) (setting forth same standard).

"While the standard for waiver of the privilege under New York State law is worded differently than the federal [standard],[5] this is essentially a distinction without a meaningful difference." *Atronic Int'l, GMBH v. SAI Semispecialists of Am., Inc.*, 232 F.R.D. 160, 161 (E.D.N.Y. 2005) (overruling objections to Magistrate Judge's Report and Recommendation in a

---

[5]  Under the federal standard, a court must balance four factors to determine if an inadvertent disclosure results in a waiver: (1) the reasonableness of the precautions taken to prevent disclosure; (2) the time taken to correct the error; (3) the extent of the specific disclosure at issue compared to the volume of the entire discovery; and (4) overarching issues of fairness. *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 104 F.R.D. 103, 105 (S.D.N.Y. 1985).

diversity case which found inadvertent disclosure using the federal standard); *see also Chrysler Capital Corp. v. Bankers Trust Co.*, No. 91 Civ. 5090, 1992 WL 58854, at *1 (S.D.N.Y. Mar. 17, 1992) (deciding to apply federal case law to question of inadvertent disclosure in diversity action due to dearth of New York state case law on the subject).  Accordingly, the Court will be guided by the New York standard as well as federal case law on this issue.

VI.   <span style="font-variant: small-caps;">Discussion</span>

    A.   **Applicability of the Attorney-Client Privilege to the Email**

Under New York law, "the party invoking the attorney-client privilege bears the burden of establishing all essential elements of the privilege."  *Magee v. Paul Revere Life Ins. Co.*, 172 F.R.D. 627, 638 (E.D.N.Y. 1997).  Defendants assert that Plaintiff has failed to establish (1) that Mr. Cossolini was acting as Plaintiff's counsel at the time the Email was sent, and (2) that any of the individuals who received the Email were acting on behalf of Plaintiff.  Gironda Aff'n at ¶ 6.

The Court finds that Plaintiff has put forth sufficient evidence, in the form of excerpts from the deposition testimony of Mr. Jeffers, an executive general adjuster employed by Liberty Mutual, to establish that Mr. Cossolini was an attorney retained by Liberty Mutual at the time the Email was sent, and that Mr. Cossolini's role was to provide Liberty Mutual with legal assistance in Plaintiff's "coverage evaluation" with respect to the fire at issue.  Kenney Reply Aff., Ex. P at 55.  Essentially, Liberty Mutual was looking for a legal opinion from Mr. Cossolini regarding coverage.  Defendants have not provided any evidence to rebut this deposition testimony.  The Court further finds that Plaintiff has sufficiently established that it was a subsidiary of Liberty Mutual at the time the Email was sent.  Mr. Jeffers's uncontroverted deposition testimony is that Plaintiff "is a subsidiary of Liberty Mutual" and that "Liberty Mutual Property handles the

commercial losses" for Plaintiff.  *Id.* at Ex. P at 10-11; *see also* Kipnis Certif. at ¶ 2 ("As the result of certain corporate transactions, Employers Insurance Company of Wausau is a subsidiary of Liberty Mutual.").

Under New York law, the attorney-client privilege applies only to communications that are made "for the purpose of facilitating the rendition of legal advice or services, in the course of a professional relationship," and the communications "must be primarily or predominantly of a legal character."  *Reliance Ins. Co. v. Am. Lintex Corp.*, No. 00 Civ 5568, 2001 WL 604080, at *2 (S.D.N.Y. June 1, 2001) (setting forth New York state attorney-client privilege standard). Here, the Email consists of a request for legal advice on two issues: (1) certain defined policy terms, and (2) whether a certain factual scenario would affect the coverage decision.  The Court finds that the Email is "primarily or predominantly of a legal character" and is protected by the attorney-client privilege under New York state law.  *See id.* (finding documents were privileged when they "do not address the quantity, value, or degree of damage sustained by the property insured" under the policy at issue).

Finally, Plaintiff may assert the privilege in this instance even though the communication was made between Liberty Mutual, Plaintiff's parent company, and Mr. Cossolini. "[T]he attorney-client protection provided for corporate clients includes, the corporation who retained an attorney, its parent, and its wholly-owned and majority-owned subsidiaries considered collectively."  *Weil Ceramics & Glass, Inc. v. Work*, 110 F.R.D. 500, 503 (E.D.N.Y. 1986). Defendants have not provided any case law to the contrary, and do not appear to dispute this point.  Accordingly, the Court finds that the Email is protected by the attorney-client privilege under New York law.

**B.      Whether the Inadvertent Disclosure of the Email Constitutes Waiver**

The next inquiry facing the Court is whether Plaintiff's act of including the Email as part of its November 5, 2007 document production to Defendants waived the attorney-client privilege.

**1.      Confidentiality Agreement**

The parties' Confidentiality Agreement explicitly provided that "[t]he inadvertent production of any document . . . in the Action shall be without prejudice to any claim that such material is protected under the attorney-client privilege . . . and no party shall be held to have waived any rights by such inadvertent production." Kenney Aff., Ex. A at 5. Courts within this circuit have noted that litigants agree to provisions such as this "to provide for the out-of-court resolution of inadvertent production issues and to avoid litigating these issues." *Prescient Partners*, 1997 WL 736726 at *4. The normal standard enunciated in existing case law for determining whether a production is "inadvertent" is inapplicable when the parties have agreed to a provision such as this. *Id.* Rather, "unless the production was completely reckless and the producing party showed no regard for preserving the confidentiality of the privileged documents, the producing party would be protected under the provisions of the confidentiality agreement." *U.S. Fidelity & Guaranty Co. v. Braspetro Oil Services Co.*, No. 97 Civ. 6124, 2000 WL 744369, at *4 (S.D.N.Y. June 8, 2000) (citing *Prescient Partners*, 1997 WL 736726 at *4).

The Court cannot conclude that Plaintiff acted "completely reckless[ly]" in producing the Email as part of its November 5, 2007 document production. Plaintiff's counsel engaged in a

multi-tiered review of the documents before their production and separated the privileged documents from those that were to be produced. The November 5, 2007 document production was accompanied by a cover letter reminding Defendants of the Confidentiality Agreement's provisions regarding inadvertently produced documents. Finally, although Plaintiff's counsel did not object on the record when the Email was marked as an exhibit during Mr. Jeffers's deposition, counsel did request the return or destruction of the Email the very next day. On this basis, the Court finds that Plaintiff's production of the Email was not "completely reckless."

Defendants have not posited a single argument as to why the provisions of the Confidentiality Agreement do not apply to this situation. Further, while Defendants argue that Plaintiff failed to take "reasonable precautions" to avoid the disclosure, Defendants do not contend that Plaintiff's actions were "completely reckless." *See* Gironda Aff'n at ¶¶ 11-13. The Court finds, therefore, that the Email was inadvertently produced and that, under the provisions of the parties' Confidentiality Agreement, there has been no waiver of the attorney-client privilege.

## 2. Inadvertent Production Under Relevant Case Law

Even assuming, *arguendo*, that the relevant provision of the Confidentiality Agreement applied only when if the production of the Email was deemed "inadvertent" under the standards set forth in the governing case law, the Court would reach the same result.

### a. Whether Plaintiff Intended to Maintain Confidentiality and Took Reasonable Steps to Prevent Disclosure

The facts of this case do not fit neatly in line with any of the cases cited by the parties. The fact that Plaintiff's counsel entered into a Confidentiality Agreement and enclosed with the

November 5, 2007 document production a cover letter reiterating that inadvertent disclosure would not waive the attorney-client privilege weighs in favor of a finding that Plaintiff intended to maintain the confidentiality of privileged documents, including the Email. Moreover, Plaintiff took several reasonable steps to avoid disclosing privileged documents: (1) an associate at the law firm reviewed the documents before the production and divided them into categories, separating out privileged documents, Smith Certif. at ¶ 3; (2) a partner at the law firm conducted a second-level review of the documents before the production, *id.*; (3) the documents were produced along with a cover letter reiterating the terms of the Confidentiality Agreement by stating that "[t]he production of this file in no way waives the attorney-client privilege or work product doctrine as it pertains to any documents inadvertently included therein," Kenney Aff., Ex. C; (4) after the Email was marked during Mr. Jeffers's deposition, Plaintiff's counsel requested the Email's return or destruction the very next day, *id.*, Ex. F; and (5) Plaintiff's counsel made several subsequent attempts to secure either the return or destruction of the Email, to no avail. *Id.*, Exs. H, J, L, M.

The Court further finds that the disclosure of a single one-page Email when compared to the overall size of the November 5, 2007 production (approximately 396 pages) weighs in favor of a finding that Plaintiff took reasonable steps to avoid disclosure of a privileged document. *See Metso Minerals Inc. v. Powerscreen Int'l Distrib. Ltd.*, No. CV-06-1446, 2007 WL 2667992, at *6 (E.D.N.Y. Sept. 6, 2007) (noting that "the mere fact of accidental disclosure does not automatically render the precautionary measures unreasonable" and that "[c]ourts have routinely found that where a large number of documents are involved, there is more likely to be an inadvertent disclosure as opposed to a knowing waiver of privilege").

15

Plaintiff also claims that its counsel's preparation of a privilege log which included the Email demonstrates that it took reasonable steps to avoid disclosing the Email. Pl. Mem. at 11. Defendants contend that the privilege log does not demonstrate Plaintiff's care or diligence because the privilege log was served after the November 5, 2007 document production. Gironda Aff'n at ¶ 14. Plaintiff counters that any delay in the service of its privilege log was reasonable and that Defendants have failed to claim any prejudice from the delay. Reply Mem. at 7 (citing *In re Honeywell Int'l, Inc. Sec. Litig.*, 230 F.R.D. 293, 300 (S.D.N.Y. 2003) (finding privilege not waived as to documents belatedly added to a privilege log when the delay between the production of documents and the supplement to the privilege log was "reasonable")). The purpose of the privilege log is to put the opposing party on notice of the privileged nature of a document and that any production of such document was inadvertent. *See Liz Claiborne, Inc. v. Mademoiselle Knitwear, Inc.*, No. 96 Civ. 2064, 1996 WL 668862, at *4 (S.D.N.Y. Nov. 19, 1996). While Plaintiff's preparation of a privilege log would generally constitute a reasonable precaution against inadvertent disclosure of privileged documents, Plaintiff's failure to serve the privilege log until nearly two months after the document production (and after a dispute as to the privileged nature of the Email had already arisen) undercuts Plaintiff's contention that this privilege log was a reasonable step to prevent disclosure of the Email.

The Court also finds that Plaintiff's failure to mark the Email as "privileged" weighs against a finding that Plaintiff acted reasonably to avoid inadvertent disclosure. *LaSalle Bank Nat'l Ass'n v. Merrill Lynch Mortgage Lending Inc.*, No. 04 Civ. 5452, 2007 WL 2324292, at *4 (S.D.N.Y. Aug. 13, 2007) (finding the reasonableness of counsel's "page-by-page review" of documents before production was "severely undercut" by counsel's "failure to notate the subject

document with any sign of its attorney-client . . . nature"). Further, counsel's failure to object at

the time that Defendants' counsel marked the Email as an exhibit during the deposition of Mr.

Jeffers also weighs against a finding that Plaintiff took reasonable steps to avoid the Email's

disclosure. *See In re Philip Services Corp. Sec. Litig.*, No. 98 Civ. 835, 2005 WL 2482494, at *2

(S.D.N.Y. Oct. 7, 2005) (finding privilege waived when, *inter alia*, documents at issue were

marked as deposition exhibits and the witness was questioned about the documents without

objection).

Overall, on balancing all of these factors, the Court concludes that Plaintiff and its

counsel did intend to maintain the Email as confidential and did take reasonable steps, though

limited, to avoid its disclosure. Such conclusion weighs in favor of a finding that the Email was

inadvertently disclosed and the attorney-client privilege was not waived.

### b. Promptness of Plaintiff's Attempts to Remedy the Situation

Plaintiff contends that it first learned of the disclosure of the Email during the December

4, 2007 deposition of Mr. Jeffers. Kenney Aff. at ¶ 7. Although Plaintiff's counsel contended

during oral argument that all objections were reserved before the deposition began, the transcript

from Mr. Jeffers's deposition makes clear that Plaintiff's counsel did not posit any specific

objection at the time the Email was introduced and marked as an exhibit. Gironda Aff'n, Ex. A.

Plaintiff's counsel did, however, request the return or destruction of the Email the very next day

following Mr. Jeffers's deposition. Kenney Aff., Ex. C. The Court finds that counsel acted

promptly following its discovery of the disclosure in an attempt to remedy the situation. *See,

e.g.*, *Metso Minerals Inc.*, 2007 WL 2667992 at *5 (finding no inordinate delay when party

notified opposing counsel of inadvertent disclosure within two days of learning of the disclosure); *Cambell v. Aerospace Products Int'l*, 830 N.Y.S. 2d 416, 417 (4th Dep't 2007) ("[P]laintiff's attorneys promptly asserted the privilege, i.e., within one day of discovery of the inadvertent disclosure.").  This factor, therefore, supports a finding that the Email was inadvertently disclosed and the attorney-client privilege was not waived.

### c.      Undue Prejudice of a Protective Order to Defendants

Defendants contend that "it would be unfair at this time for this Court to order the defendants to return the subject email" since Defendants "relied upon its contents in planning [their] defense of the underlying action," specifically by conducting Mr. Jeffers's deposition "with the belief that they would be able to use the subject email at trial," and because Defendants have "expended a large amount of time and resources in conducting a further investigation into what was said in the subject email."  Gironda Aff'n at ¶¶ 15, 16.  Defendants further argue that restoration of the privilege with respect to the Email would deprive Defendants of "vital information."  Defendants believe that the Email "indicates that the land owner may have had something to do with the fire that destroyed the within property," and that because Plaintiff has accused Defendants of causing the fire, the Email "is necessary to determine the validity of the plaintiff's claim."  *Id.* at ¶ 16.

Plaintiff counters that the Email does not indicate that the landlord may have caused the fire but, instead, "requests a legal opinion on whether an insurance policy covered certain property, and whether the policy covered the loss if a landlord started a fire."  Reply Mem. at 9. Plaintiff claims that Defendants have not expended any resources in connection with an

investigation based upon the contents of the Email – Defendants have not retained an expert, they have not deposed the landlord, and they did not attend the deposition of the fire investigator who determined the cause of the fire. *Id.* Finally, Plaintiff asserts that even if Defendants wanted to investigate other possible causes of the fire, they do not need the Email to do so. *Id.* The Court agrees.

In *Atronic International, GMBH v. SAI Semispecialists of America, Inc.*, 232 F.R.D. 160 (E.D.N.Y. 2005), relied upon by Defendants in support of their position, the court found that certain privileged documents that had been inadvertently produced in discovery "contain information that go[es] to the heart of this breach of contract litigation" such that "defendant may be prejudiced by restoring immunity to the inadvertently disclosed e-mails." *Id.* at 166. The court noted that not only did the emails contain information that was "vital to the factual claims and defenses" in the action, but "plaintiff's precautions in preventing the inadvertent disclosure of the two protected documents constitute[d] inexcusable carelessness." *Id.*; *see also Jakobleff v. Cerrato, Sweeney & Cohn*, 468 N.Y.S.2d 895, 835 (2d Dep't 1983) (noting a waiver of attorney-client privilege of inadvertently produced documents may be found where "application of the privilege would deprive the adversary of vital information").

Here, the Court finds that, while the Email may contain information that has some relevance to the action, the Email does not contain information that is vital to Defendants' defenses. *See Metso Minerals, Inc.*, 2007 WL 2667992 at *6 (noting that this factor of the analysis does not focus on whether the privilege will deprive a party of "pertinent information"); *In re Copper Market Antitrust Litig.*, 200 F.R.D. 213, 223 (S.D.N.Y. 2001) ("Depriving a party of information in an otherwise privileged document is not prejudicial."). The Court does not

agree with Defendants' position that the Email "indicates that the land owner may have had something to do with the fire . . ." *Compare Atronic Int'l*, 232 F.R.D. at 166 (inadvertently produced documents contained admissions by plaintiff "that differ markedly from the factual position plaintiff has taken in this action" and so were vital to the defendant's defense). Furthermore, the Email is not necessary in order for Defendants to investigate other possible causes of the fire. Indeed, Plaintiff's counsel confirmed during oral argument that Plaintiff does not seek to preclude Defendants from asserting at trial the factual or legal theory that someone or something other than Defendants may have caused the fire – Plaintiff simply wants the Email itself to be returned or destroyed. On the other hand, Plaintiff will suffer a disadvantage if a waiver of the privilege is found because Plaintiff's confidential legal communications with its attorney will be compromised. The Court concludes, therefore, that there has been no showing of prejudice to Defendants if Plaintiff's assertion of privilege as to the Email is upheld.

### d.    Ethical Considerations

Plaintiff argues finally that Defendants' counsel violated their ethical obligations by (1) failing to notify Plaintiff when the Email was received and, instead, "surprising plaintiff with it at plaintiff's deposition," and (2) filing the Email on the publicly-accessible ECF system, rather than preserving the Email for an *in camera* inspection by the Court. Pl. Mem. at 17. It is well-settled that "[a] lawyer who receives materials that on their face appear to be subject to the attorney-client privilege or otherwise confidential, under circumstances where it is clear they were not intended for the receiving lawyer, should refrain from examining the materials, notify the sending lawyer and abide the instructions of the lawyer who sent them." *United States v. Rigas*, 281 F. Supp. 2d 733, 742 (S.D.N.Y. 2003) (quoting Am. Bar Ass'n Standing Comm. On

Ethics & Prof. Resp., Formal Op. 92-368 (1992)); *see also Metso Minerals Inc.*, 2007 WL 2667992 at *8 (setting forth same standard and finding that "disputes such as these are troubling given the ethical standards all attorneys are expected to adhere to"). The Court finds it difficult to imagine that any attorney receiving and reading the Email at issue would not stop, based on the contents of that Email, and consider whether this document was indeed a request for a legal opinion. Furthermore, the Court finds it wholly improper, in any event, for Defendants to have filed the Email on the publicly-accessible ECF system without first contacting Plaintiff or the Court.

### C.    Plaintiff's Request to Move for Costs

Plaintiff reserved its right to move for "costs related to the privileged e-mail should Plaintiff prevail on this motion." *Id.* at 18. During oral argument, Plaintiff acknowledged that such a request was premature and Defendants do not address this issue in their papers. If Plaintiff decides to pursue such action, in accordance with Fed. R. Civ. P. 35(a)(5)(A) – and the Court takes no position at this juncture whether it is appropriate for Plaintiff to proceed with such a motion – the parties shall notify the Court, in writing, within fifteen (15) days of the date of this Order of the briefing schedule they have agreed upon. Any such motion must be made in accordance with the Federal Rules and must be filed in accordance with my "Bundle Rule," Individual Practice Rule III(C)(1)(a).

### VII.    CONCLUSION

For the reasons set forth above, the Court finds that the Email is protected by the attorney-client privilege and that such privilege was not waived by virtue of Plaintiff's

inadvertent disclosure of the Email as part of its November 5, 2007 document production to Defendants.  Therefore, Plaintiff's motion for a protective order [DE 22] is hereby GRANTED and Plaintiff's motion to seal the document [DE 16] is also GRANTED.  Defendants are directed to either return the originally produced Email and all copies to Plaintiff's counsel <u>OR</u> destroy the Email and all copies and provide Plaintiff's counsel with a written certification that such destruction has occurred.  Defendants are directed to do so within ten (10) days of the date of this Order.  The Email, which was originally filed on the ECF Docket as an attachment to Defendants' letter motion and was subsequently temporarily sealed by Order of this Court, will remain sealed.

**SO ORDERED**

Dated: Central Islip, New York
       September 17, 2008

<u>/s/ A. Kathleen Tomlinson</u>
_____A. KATHLEEN TOMLINSON
U.S. Magistrate Judge